1  WALTER K. OETZELL (State Bar No. 109769)
   *woetzell@dgdk.com*
2  UZZI O. RAANAN (State Bar No. 162747)
   *uraanan@dgdk.com*
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   1900 Avenue of the Stars, 11th Floor
4  Los Angeles, California 90067-4402
   Telephone:   (310) 277-0077
5  Facsimile:    (310) 277-5735

6  Attorneys for John J. Menchaca, Trustee for the
   Chapter 7 Estate of TIFKAH, fka the House
7  Research Institute

8

9

10                 **UNITED STATES BANKRUPTCY COURT**

11                **CENTRAL DISTRICT OF CALIFORNIA**

12                    **LOS ANGELES DIVISION**

| | |
|---|---|
| 13  In re | Case No. 2:14-bk-21532-TD |
| 14  TIFKAH, fka THE HOUSE RESEARCH INSTITUTE | Chapter 7 |
| 15 | |
|       Debtor. | |
| 16 | Adv. No. |
| 17  JOHN J. MENCHACA, TRUSTEE FOR THE CHAPTER 7 ESTATE OF TIFKAH, | **COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF LOYALTY;** |
| 18        Plaintiff, | **BREACH OF FIDUCIARY DUTY OF CARE; AND CORPORATE WASTE** |
| 19 | |
| 20        vs. | |

21  WALLIS ANNENBERG, an individual;
   LYNN BOOTH, an individual; JAMES D.
22  BOSWELL , an individual; DERALD E.
   BRACKMANN, an individual; TINA
23  CARUSO, an individual; STEPHEN
   CHANDLER, an individual; MALCOLM
24  CUTLER, JR., an individual; DAVID Z.
   D'ARGENIO, an individual; JOAN G. FLAX,
25  an individual; TOMILEE TILLEY GILL, an
   individual; STRAFFORD R. GRADY, an
26  individual; ROBERT G. HAYMAN, an
   individual; JOHN W. HOUSE, an individual;
27  DAVID H. KOCH, an individual; WILLIAM
   LUXFORD, an individual; CATHERINE
28  MEYER, an individual; PATRICIA
   MOLLER, an individual; LAURENCE G.

1322103.4                                          1

1  PREBLE, an individual; CARMEN
   PULIAFITO, an individual; CHARLOTTE
2  SCHAMADAN, an individual; EDWARD P.
   ROSKI, an individual; FOREST G. SMITH
3  III, an individual; JOHN THOMAS, an
   individual; JAMES S. TWERDAHL, an
4  individual; WILLIAM B. WITTE, an
   individual; PETER WU, an individual; AND
5  DOES 1-25,

6         Defendants.

## JURISDICTION AND VENUE

1.     This adversary proceeding is a core proceeding pursuant to the provisions of 28

U.S.C. § 157(b)(2)(A) and (O), and this Court has jurisdiction over this adversary proceeding

pursuant to 28 U.S.C. §157, §1331, and § 1334.

2.     To the extent that the Court may determine that the claims for relief herein are not

core, as defined by 28 U.S.C. § 157, Plaintiff hereby consents to the entry of final orders or

judgments by the Bankruptcy Court on all the claims herein.

3.     Venue in this judicial district is appropriate pursuant to the provisions of 28 U.S.C.

§1409(a).

4.     John J. Menchaca (the "Plaintiff") is the duly appointed and acting trustee for the

Chapter 7 bankruptcy estate (the "Estate") of House Research Institute ("HRI" or the "Debtor"), in

the bankruptcy case herein currently pending in the Bankruptcy Court for the Central District of

California as Case No. 2:14-bk-21532 and entitled *In re TIFKAH*, (the "TIFKAH Bankruptcy

Case").  Plaintiff brings this suit solely in his capacity as the Chapter 7 Trustee.

5.     The TIFKAH Bankruptcy Case was commenced by the Debtor filing a voluntary

Chapter 7 petition on or about June 12, 2014  (the "Petition Date").

## PARTIES

6.     Plaintiff is the duly qualified and acting Chapter 7 Trustee herein and brings this suit

solely in his capacity as the Chapter 7 Trustee.

1322103.4                                    2

1    7.    Plaintiff is informed and believes, and thereon alleges, that defendant Wallis

2    Annenberg ("Annenberg") is an individual and at all times material herein was a resident of the

3    County of Los Angeles, California.

4    8.    Plaintiff is informed and believes, and thereon alleges, that defendant Lynn Booth

5    ("Booth") is an individual and at all times material herein was a resident of the County of Los

6    Angeles, California.

7    9.    Plaintiff is informed and believes, and thereon alleges, that defendant James D.

8    Boswell ("Boswell") is an individual and at all times material herein was a resident of the County

9    of Los Angeles, California.

10    10.    Plaintiff is informed and believes, and thereon alleges, that defendant Derald E.

11    Brackmann ("Brackmann") is an individual and at all times material herein was a resident of the

12    County of Los Angeles, California.

13    11.    Plaintiff is informed and believes, and thereon alleges, that defendant Tina Caruso

14    ("Caruso") is an individual and at all times material herein was a resident of the County of Los

15    Angeles, California.

16    12.    Plaintiff is informed and believes, and thereon alleges, that defendant Stephen

17    Chandler ("Chandler") is an individual and at all times material herein was a resident of the County

18    of Los Angeles, California.

19    13.    Plaintiff is informed and believes, and thereon alleges, that defendant Malcolm

20    Cutler, Jr. ("Cutler") is an individual and at all times material herein was a resident of the County

21    of Los Angeles, California.

22    14.    Plaintiff is informed and believes, and thereon alleges, that defendant David Z.

23    D'Argenio ("D'Argenio") is an individual and at all times material herein was a resident of the

24    County of Los Angeles, California.

25    15.    Plaintiff is informed and believes, and thereon alleges, that defendant Joan G. Flax

26    ("Flax") is an individual and at all times material herein was a resident of the County of Los

27    Angeles, California.

28

1322103.4

3

1        16.     Plaintiff is informed and believes, and thereon alleges, that defendant Tomilee

2   Tilley Gill ("Gill") is an individual and at all times material herein was a resident of the County of

3   Los Angeles, California.

4        17.     Plaintiff is informed and believes, and thereon alleges, that defendant Strafford R.

5   Grady ("Grady") is an individual and at all times material herein was a resident of the County of

6   Los Angeles, California.

7        18.     Plaintiff is informed and believes, and thereon alleges, that defendant Robert G.

8   Hayman ("Hayman") is an individual and at all times material herein was a resident of the County

9   of Los Angeles, California.

10        19.     Plaintiff is informed and believes, and thereon alleges, that defendant John W.

11   House ("House") is an individual and at all times material herein was a resident of the County of

12   Los Angeles, California.

13        20.     Plaintiff is informed and believes, and thereon alleges, that defendant David H.

14   Koch ("Koch") is an individual and at all times material herein was a resident of the County of

15   New York, New York.

16        21.     Plaintiff is informed and believes, and thereon alleges, that defendant William

17   Luxford ("Luxford") is an individual and at all times material herein was a resident of the County

18   of Los Angeles, California.

19        22.     Plaintiff is informed and believes, and thereon alleges, that defendant Catherine

20   Meyer ("Meyer") is an individual and at all times material herein was a resident of the County of

21   Los Angeles, California.

22        23.     Plaintiff is informed and believes, and thereon alleges, that defendant Patricia

23   Moller ("Moller") is an individual and at all times material herein was a resident of the County of

24   Los Angeles, California.

25        24.     Plaintiff is informed and believes, and thereon alleges, that defendant Laurence G.

26   Preble ("Preble") is an individual and at all times material herein was a resident of the County of

27   Boulder, Colorado.

28

25.     Plaintiff is informed and believes, and thereon alleges, that defendant Carmen Puliafito ("Puliafito") is an individual and at all times material herein was a resident of the County of Los Angeles, California.

26.     Plaintiff is informed and believes, and thereon alleges, that defendant Charlotte Schamadan ("Schamadan") is an individual and at all times material herein was a resident of the County of Los Angeles, California.

27.     Plaintiff is informed and believes, and thereon alleges, that defendant Edward P. Roski ("Roski") is an individual and at all times material herein was a resident of the County of Los Angeles, California.

28.     Plaintiff is informed and believes, and thereon alleges, that defendant Forest G. Smith III ("Smith") is an individual and at all times material herein was a resident of the County of Orange, California.

29.     Plaintiff is informed and believes, and thereon alleges, that defendant John Thomas ("Thomas") is an individual and at all times material herein was a resident of the County of Los Angeles, California.

30.     Plaintiff is informed and believes, and thereon alleges, that defendant James S. Twerdahl ("Twerdahl") is an individual and at all times material herein was a resident of the County of Los Angeles, California.

31.     Plaintiff is informed and believes, and thereon alleges, that defendant William B. Witte ("Witte") is an individual and at all times material herein was a resident of the County of Los Angeles, California.

32.     Plaintiff is informed and believes, and thereon alleges, that defendant Peter Wu ("Wu") is an individual and at all times material herein was a resident of the County of Los Angeles, California.

33.     Plaintiff is informed and believes that the above named defendants , and each of them ("Defendants"), at all times material herein were insiders of the Debtor.

34.     The true names and/or capacities, whether individual, corporate, associate or otherwise that Plaintiff designated as Does 1 to 25 are unknown to Plaintiff, who therefore sues

said defendants by such fictitious names.  Plaintiff will seek leave to amend this Complaint when the true names and/or capacities of said defendants have been ascertained.  Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein by such fictitious names are responsible in some manner for the occurrences alleged in this Complaint, and are legally obligated to Plaintiff for the reasons stated herein.

35.    At the times of the acts or omissions complained of herein, each of the Defendants was a Trustee serving on the Board, as defined below.

36.    At the times of the acts or omissions complained of herein, Defendant Boswell was also the Chief Executive Officer of HRI.

37.    Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, at all times material herein, were the agents, employees, servants, co-venturers and/or legal representatives of each of the other Defendants, and that in doing the things herein alleged, Defendants, and each of them, acted within the course and scope of said relationships and with the knowledge, permission, consent, ratification and/or adoption of the other Defendants, and each of them.

## **GENERAL ALLEGATIONS**

38.    HRI was established in 1946 by Dr. Howard House and incorporated under the California Nonprofit Public Benefit Corporation Law.  Over the years it became and remained one of the country's pre-eminent research facilities for hearing disorders.

39.    At all times relevant herein, HRI was governed by a Board of Trustees (the "Board").

40.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant herein, HRI funded its operations in two ways.  First, it obtained government grants through its researchers ("Research Grants").  When a researcher obtained a grant, the government also issued another "indirect grant" allocation to HRI in the approximate amount of 80% of the grant, to defer operational expenses connected with the grant, including the salary of the researcher.

41.    Plaintiff is informed and believes, and thereon alleges, that the second source of HRI's funds was donations from individuals or other entities ("Development Funds"). These donations were unrestricted, partially restricted, or restricted in their use. The Research Grants and Development Funds each had a management structure headed by a vice president.

42.    Plaintiff is informed and believes, and thereon alleges, that in or around 1990, HRI's main five story building (the "Main Building"), consisting of 115,369 square feet, was built for approximately $32 million.

43.    HRI did not own the fee interest in the land upon which the Main Building and the new wing, discussed below, sat, but, instead, leased the land from St. Vincent Medical Center ("St. Vincent" or the "Ground Lessor"), the fee owner, pursuant to that certain Ground Lease dated December 31, 1986 (the "Ground Lease"). As discussed below, the Ground Lease contained certain restrictive use covenants.

44.    Plaintiff is informed and believes, and thereon alleges, that in or around 2004, HRI felt it needed additional research space, and it began planning a new wing to the Main Building of approximately 25,000 square feet of mostly lab space and conference rooms.

45.    HRI engaged Gates Capital to arrange for the issuance and sale of tax free bonds to provide financing for construction of the new wing.

46.    On August 30, 2007, the California Statewide Communities Development Authority issued $29,910,000.00 in Series 2007 Variable Rate Demand Bonds (the "2007 Bonds") for the purpose of providing funds to make a loan to HRI to fund this construction, to redeem HRI's existing bonds, to pay off two notes, and to pay bond costs, insurance costs, and fees in respect of the letter of credit defined and discussed below. The 2007 Bonds were scheduled to mature in 2037. The 2007 Bonds and any remarketing, reoffering, or reissue of the same shall collectively be referred to hereafter as the "Bonds."

47.    Payment in respect of the Bonds under various circumstances, including default, was secured by a letter of credit (the "Letter of Credit") issued by City National Bank ("CNB").

48.    In turn, HRI entered into a reimbursement agreement with CNB requiring HRI to repay CNB for any draws on the Letter of Credit (the "CNB Reimbursement Agreement").

49.    The new wing, named the "Wallis Annenberg Research Center," was completed in 2008 and HRI partially moved in.  From time to time herein, the Wallis Annenberg Research Center together with the Main Building shall be referred to as the "Building" or the "Improvements," and, together with the Ground Lease, the "Real Property."

50.    Plaintiff is informed and believes, and thereon alleges, that HRI never defaulted on its bond payment obligations, nor was there any draw on the Letter of Credit because of any payment default by HRI.

51.    Beginning in 2008 and continuing thereafter, HRI had continuing financial difficulties, stemming in large measure from operational expenses and overstaffing.

52.    Plaintiff is informed and believes, and thereon alleges, that HRI's financial pressures were exacerbated by certain management practices or policies, such as paying researchers' salaries from HRI's operational funds, notwithstanding the inclusion of salary components in Research Grants, not fully utilizing the Research Grants awarded to HRI's researchers, or not utilizing them at all, despite attendant fixed costs or shortage in HRI's operational funds.

53.    Plaintiff is informed and believes, and thereon alleges, that HRI was slow to respond to these financial difficulties, what response it employed was either insufficient or untimely, and it did not enforce various pledges and promised contributions, the failure of which to pay contributed to HRI's financial pressures.

54.    Plaintiff is informed and believes, and thereon alleges, that although HRI never defaulted in making the required payments in respect of the obligations on the Bonds, it failed from time to time to comply with certain covenants in the CNB Reimbursement Agreement, particularly the liquidity and net assets covenants.

55.    Plaintiff is informed and believes, and thereon alleges, that CNB waived these defaults from time to time, but this failure to comply remained an issue that HRI failed to both appreciate and satisfactorily resolve.

56. Plaintiff is informed and believes, and thereon alleges, that on or about June 30, 2010, HRI failed to satisfy the liquidity covenant in the CNB Reimbursement Agreement, indicating, along with other records, that it was facing a liquidity crisis.

57. Plaintiff is informed and believes, and thereon alleges, that beginning with HRI's Fiscal Year 2010 and continuing thereafter, HRI's auditors included going concern provisions in its yearly audited financials.

58. Plaintiff is informed and believes, and thereon alleges, that in Fiscal Year 2012 and thereafter, HRI's operational costs exceeded its revenue and its unrestricted net assets were less than its liabilities.

59. Plaintiff is informed and believes, and thereon alleges, that notwithstanding the existential threat HRI's precarious financial position posed, Board meetings were canceled from time to time because of insufficient attendance to constitute a quorum.

60. Plaintiff is informed and believes, and thereon alleges, that neither management, particularly through Boswell, nor those Trustees which were members of the Board's Finance and Executive Committee, appropriately reported the seriousness of HRI's financial condition to the Board.

61. Plaintiff is informed and believes, and thereon alleges that, by July 2012, a restructuring management consultant had proposed and the Board contemplated a plan for the sale of or the Building and, if possible, the Real Property.

62. Plaintiff is informed and believes, and thereon alleges, that HRI unreasonably wasted valuable time, allowed the plan to change form significantly, and, thereafter, failed to actively pursue such a sale for a period approximating or exceeding a year.

63. Plaintiff is informed and believes that by June 2012 in excess of $15 million in permanently restricted endowment funds had been borrowed by HRI or appropriated and spent for operational expenses.

64. Plaintiff is informed and believes that certain restricted donations or endowments were appropriated and spent for purposes other than the purposes for which they were designated

1   and restricted, without notice to or permission from the donors that established such restricted

2   donations or endowments.

3       65.    Plaintiff is informed and believes, and thereon alleges, that by the end of 2012,

4   various donors had discontinued funding HRI for various reasons, including, without limitation,

5   HRI's use of donations for purposes other than those for which they were designated and restricted.

6       66.    In 2013, HRI's financial problems and liquidity crisis worsened.

7       67.    Plaintiff is informed and believes, and thereon alleges, that midway through 2013,

8   the decision was made that HRI would try to form an association with a larger research institution,

9   preferably UCLA or USC.  However, instead of forming such an association which would have

10  benefitted HRI and its operations, HRI allowed USC and UCLA to hire away the vast majority of

11  HRI's researchers.

12      68.    Plaintiff is informed and believes, and thereon alleges, that, by October 4, 2013,

13  CNB notified HRI by letter of even date that it would no longer waive any existing defaults in the

14  CNB Letter of Credit Reimbursement Agreement.

15      69.    Plaintiff is informed and believes, and thereon alleges, that, by January 4, 2014,

16  CNB notified HRI by letter to Boswell of even date that:

17          A.    HRI was in default of various covenants in respect of the CNB Letter of

18  Credit Reimbursement Agreement;

19          B.    HRI had sold equipment and machinery subject to CNB's security interest

20  and received proceeds therefrom in an amount exceeding $700,000;

21          C.    CNB had previously demanded sequestration of the proceeds from the sale

22  of the equipment and machinery, and HRI failed to comply; and

23          D.    CNB demanded immediate turnover of the proceeds from the sale of the

24  equipment and machinery

25      70.    Plaintiff is informed and believes, and thereon alleges, that, by March 14, 2014,

26  CNB notified HRI by letter to the Board of even date that:

27          A.    HRI was in default of various covenants in respect of the CNB Letter of

28  Credit Reimbursement Agreement;

1322103.4

1          B.      HRI has failed to comply with prior demands to cure the defaults;

2          C.      HRI has failed to comply with prior demands to turn over proceeds of the

3   sale of the equipment and machinery above;

4          D.      Boswell has expressed his intention to expend CNB's collateral and proceeds

5   thereof in violation of CNB's property rights;

6          E.      HRI was operating "in the vicinity of insolvency" and, therefore, "now owes

7   a fiduciary duty to CNB and creditors;" and

8          F.      CNB requested turnover of the above proceeds.

9

10

11                  **THE BOARD'S ABDICATION OF CRUCIAL AUTHORITY**

12          71.    On March 7, 2014, the Board authorized Boswell to file and act on its behalf in an

13  HRI Chapter 7 bankruptcy case.

14          72.    Plaintiff is informed and believes, and thereon alleges, that prior and subsequent to

15  said authorization Boswell represented HRI in the leasing, marketing, and sale of its Real Property.

16          73.    Plaintiff is informed and believes, and thereon alleges, that, prior and subsequent to

17  said authorization, Defendant Meyer represented HRI in the leasing, marketing, and sale of its Real

18  Property and in respect of the bankruptcy case above, either independently or by assisting Boswell.

19          74.    Plaintiff is informed and believes, and thereon alleges that, less than a year prior to

20  said authorization, the Real Property was appraised as having a fair market value in excess of

21  $52,000,000.

22          75.    Plaintiff is informed and believes, and thereon alleges, that in or around July 2013,

23  HRI engaged CBRE as its agent to lease, market, and sell its Real Property.

24          76.    Plaintiff is informed and believes, and thereon alleges, that, in breach of their

25  fiduciary duties the Trustees, and each of them, abdicated crucial decision making authority to

26  Boswell, Meyer, CBRE, and each of them, prior and subsequent to said authorization.

27

28

1    77.    Plaintiff is informed and believes, and thereon alleges, that, in breach of their

2    fiduciary duties, the Defendant Trustees, and each of them, failed to supervise Boswell, Meyer,

3    CBRE, and each of them, prior and subsequent to said authorization.

4

5    **THE FLAWED SALE PROCESS**

6    78.    Plaintiff is informed and believes, and thereon alleges, that instead of commencing

7    an open and competitive sale process in respect of the same reasonably calculated to produce a

8    price at least equal to the market value of HRI's Real Property, Boswell, Meyer, and CBRE

9    engaged HRI in a flawed sale process.

10    79.    Plaintiff is informed and believes, and thereon alleges, that said flawed sale process

11    initially consisted of a limited notice of the sale to a small and select group of potential purchasers

12    or investors.  The transaction contemplated by this notice (the "Initial Sale Transaction") was the

13    sale of the Building and HRI's interest as the lessee of the Ground Lease.

14    80.    Plaintiff is informed and believes, and thereon alleges, that, notwithstanding the

15    authorization to file bankruptcy above, Boswell, Meyer, and CBRE had determined to sell HRI's

16    Real Property without an open and public marketing process and outside of the supervision of the

17    bankruptcy court.

18    81.    Plaintiff is informed and believes, and thereon alleges, that, subsequent to these

19    initial marketing efforts, Boswell, Meyer, CBRE, and each of them, seized on an incomplete sale

20    proposal floated by Watt Investment Partners ("Watt") which proposal changed in form, scope, and

21    the assets being acquired over a significant period of time.

22    82.    Plaintiff is informed and believes, and thereon alleges, that this change in form,

23    scope, and assets included, inter alia, the sale by the Ground Lessor of its fee interest in the land,

24    along with the Building, rather than simply HRI's sale of the Building and its interest in the Ground

25    Lease.

26    83.    Plaintiff is informed and believes, and thereon alleges, that this change in form,

27    scope, and assets also included, inter alia, the sale by HRI of all, or substantially all, of its assets,

28

including the Real Property and significant and valuable personal property (collectively, the "Property"), rather than just the Building and HRI's interest in the Ground Lease.

84.    Plaintiff is informed and believes, and thereon alleges, that this change in form, scope, and assets included, inter alia, HRI's payment of an amount equal to or approximating $100,000 on account of its obligation to CNB, an additional amount to the Ground Lessor, HRI's continuing liability to Watt of not less than $1,000,000, and HRI's receipt of a release or releases of limited scope and value.

85.    Plaintiff is informed and believes, and thereon alleges, that prior to this change in form, scope, and assets, HRI, the Trustees, Boswell, Meyer, and each of them had been informed, inter alia, by CBRE that the terms of the restrictive use provisions in the Ground Lease significantly reduced amounts that prospective purchasers were willing to offer for the assets comprised by the Initial Sale Transaction.

86.    Plaintiff is informed and believes, and thereon alleges that, beginning in March 2014 and thereafter, Boswell, Meyer, CBRE, and each of them, were aware of this change in form and scope of the sale and in the nature of the assets being acquired by Watt and the significance of these changes.

87.    Plaintiff is informed and believes, and thereon alleges that on or about April 2, 2014, Don Graham, HRI's former Vice President of Development sent a letter by email to Boswell, Meyer, and each of them, commenting that the proposed sale to Watt was "significantly below appraised and market rate (essentially a 'short sale')." Graham informed Boswell that since the proposed sale now included the fee interest in the land and eliminated the Ground Lease, the price of the assets sold and number of potential purchasers would significantly increase. He suggested, inter alia, that other potential investors should be contacted and notified of the new terms of the proposed sale because those potential investors were not aware that the property was being sold at a price so far below market value and because those potential investors initially lost interest due to the numerous restrictions associated with the Ground Lease. He informed Boswell and Meyer that those other potential investors should have a new interest if the sale of the Building if the fee interest in the land was now part of the package. Mr. Graham stated that there may have been

1  insufficient time for HRI to factor the above in its limited marketing efforts and that under the

2  supervision of the bankruptcy court HRI could wait for a more attractive offer and a price more

3  consistent with the value of the assets now being sold.

4       88.    Prior to or as of this point and thereafter, Boswell, Meyer, and the Trustees knew or

5  should have known that this change in form and scope of the sale and in the nature of the assets

6  being sold would have a significant effect on both the number of potential buyers and the value of

7  the assets now being sold.

8       89.    Plaintiff is informed and believes, and thereon alleges that, prior to or as of this

9  point and thereafter, Boswell, Meyer, and the Trustees had actual knowledge that this change in

10  form and scope of the sale and in the nature of the assets being sold would have a significant effect

11  on both the number of potential buyers and the value of the assets now being sold.

12       90.    The Defendants' fiduciary duties of good faith, loyalty, and care required them to

13  obtain and consider all material information and to take the steps necessary to market and to obtain

14  the best price for HRI's property, both prior to and in respect of the change in form and scope of

15  the sale and in the assets being sold, including a sale after filing under the supervision of the

16  bankruptcy court.

17       91.    Plaintiff is informed and believes, and thereon alleges that, notwithstanding

18  observations and requests contained therein, Boswell summarily dismissed Graham's letter and

19  continued on with the proposed sale to Watt without obtaining or considering the required

20  information or taking any additional steps to market the Property in respect of the change in form

21  and scope of the sale and in the assets being sold, including a sale after filing under the supervision

22  of the bankruptcy court.

23       92.    Plaintiff is informed and believes, and thereon alleges that no attempt was made to

24  contact prior or prospective purchasers to see if they were interested in bidding or further bidding

25  on the Property or to re-market the Property in view of the change in form and scope of the sale and

26  in the assets being sold

27

28

1

### THE RUSHED FIRE SALE

2        93.    Defendants' failures to meaningfully address the financial issues facing HRI, their

3 failure to meaningfully address and resolve the issues arising with respect to the CNB

4 Reimbursement Agreement, their abdication of decision making power to Boswell, Meyer, and

5 each of them, their failure to supervise Boswell, Meyer, and each of them, their failure to obtain

6 and consider all material information in respect of the sale of the Property, and their failure to

7 consider and make the necessary changes in respect of the sale of the Property culminated in an

8 uninformed, rushed, and hurried sale of all or substantially all of HRI's assets, real and personal,

9 for a grossly low amount in a sale transaction where the Plaintiff is informed and believes HRI

10 received no proceeds, but instead, it was required to pay an additional amount equaling or

11 approximating $100,000 on account of obligations to CNB and an additional amount to the Ground

12 Lessor, and it remained liable to the Watt Party, defined below, in the amount of $1,000,000 on an

13 obligation secured by the assets sold and those remaining.

14        94.    Plaintiff is informed and believes, and thereon alleges, that the terms of this

15 transaction (the "Watt Transaction") were substantially that (a) Watt or an entity named RP WIP

16 LA Med Office Lender, LLC (individually or collectively, as applicable, the "Watt Party")

17 purchased CNB's rights as against HRI under, inter alia, the CNB Reimbursement Agreement for

18 $21,500,000, (b) the Watt Party purchased all, or substantially all, of HRI's assets, including its

19 valuable personal property and the Real Property for the claims it had obtained against HRI in

20 respect of the CNB Reimbursement Agreement, (c) HRI received no funds, but instead paid an

21 additional sum equaling or approximating $100,000 in respect of the CNB Reimbursement

22 Agreement, (d) HRI paid an amount at closing of $251,063.00, (e) HRI remained liable to the Watt

23 Party in an amount not less than $1,000,000 on an obligation secured by the assets sold and on any

24 remaining assets, and (f) the Watt Party purchased the fee interest in the land from the Ground

25 Lessor for an amount, on information and belief, of approximately $3,000,000.

26        95.    Plaintiff is informed and believes, and thereon alleges that, as part of the Watt

27 Transaction, the Defendants were given releases from the Watt Party.

28

1      96.      Plaintiff is informed and believes, and thereon alleges that, as part of the Watt

2  Transaction, HRI received no release from the Watt Party except for amounts in excess $1,000,000,

3  but it was required to give and gave a full release to the Watt Party.

4      97.      Plaintiff is informed and believes, and thereon alleges that, as part of the Watt

5  Transaction, HRI received no release from CNB, but it was required to give and gave a full release

6  to CNB.

7      98.      On June 4, 2014, Boswell sent the Trustees, and each of them, an email requesting

8  them to approve the Watt Transaction, describing certain terms of the sale, and attaching a copy of

9  the "near final version" of the purchase and sale agreement and a resolution approving the sale.

10  Boswell requested "immediate response by email" to him because "[closing] is set for June 6," two

11  days later.  The Board did not meet or engage in further discussion of the merits of the Watt

12  Transaction.

13      99.      Plaintiff is informed and believes, and thereon alleges, that the following Trustees

14  (the "Approving Trustees") voted to approve the Watt Transaction:

15           1.      Booth,

16           2.      Brackmann

17           3.      Caruso

18           4.      Chandler

19           5.      Cutler

20           6.      D'Argenio

21           7.      Flax

22           8.      Gill

23           9.      Hayman

24           10.     Koch

25           11.     Luxford

26           12      Meyer

27           13.     Moller

28           14.     Preble

1322103.4                              16

1    15.    Puliafito

2    16.    Schamadan

3    17.    Smith

4    18.    Thomas

5    19.    Twerdahl

6    20.    Wu

7    100.    After consummation of the transaction above, HRI filed the TIFKAH Bankruptcy

8    Case on the Petition Date.

9    101.    Plaintiff is informed and believes, and thereon alleges, that, less than two years after

10    the closing of the Watt Transaction, the Watt Party sold the Property and the fee interest in the land

11    for an amount in excess of $50,000,000.

12    102.    Plaintiff is informed and believes, and thereon alleges, that on or about November 1,

13    2013, Boswell, Meyer, and each of them, were notified by email from Preble of HRI's legal duty to

14    notify the California Attorney General prior to the sale of all or substantially all of its assets.

15    103.    Despite the Defendants' knowledge that under California law a sale of all or

16    substantially all of a non-profit's assets requires notice to the California Attorney General, which

17    has the authority to review and object to such a sale, this notice was not given prior to the sale

18    herein, or at all, ensuring no oversight of the Watt Transaction.

19

20    **DEFENDANTS' ACTS AND OMISSIONS CONSTITUTED BREACHES OF THEIR**

21    **FIDUCIARY DUTIES TO HRI AND DUTIES TO CREDITORS.**

22    104.    Defendants, and each of them, at all times herein, were obligated to act on an

23    informed basis, in good faith and, in a manner consistent with the best interests of HRI.  Among

24    Defendant's duties were the duty of loyalty, the duty of care, and the duty of obedience, each such

25    duty comprising and including the duty to act in good faith.

26    105.    Defendants, and each of them, by their acts or omissions set forth above, failed to

27    act in an informed manner and in good faith and breached their fiduciary duties to HRI, including,

28    without limitation, the following:

1          **(a)**    Failing to recognize HRI's precarious financial position and red flags

2                  indicating the same before and during its liquidity crisis.

3          **(b)**    Regularly ignoring HRI's precarious financial position and red flags both

4                  before and after the liquidity crisis.

5          **(c)**    Failing to inform the Board of the true nature of HRI's precarious financial

6                  position and red flags both before and after the liquidity crisis.

7          **(d)**    Failing to engage HRI to improve its precarious financial position.

8          **(e)**    Failing to properly market HRI's assets before and during its liquidity crisis.

9          **(f)**    Failing to timely employ a turnaround or industry consultant before and

10                 during the liquidity crisis.

11          **(g)**    Failing to timely implement policies, steps, and suggestions of consultants to

12                 improve HRI's precarious financial position.

13          **(h)**    Failing to effectively implement recognized options to improve HRI's

14                 precarious financial position.

15          **(i)**    Failing to resolve issues relative to the covenants of the CNB

16                 Reimbursement Agreement.

17          **(j)**    Approving the appropriation and spending of restricted donation and

18                 endowment funds for operational expenses or for matters other than which

19                 such funds were given.

20          **(k)**    Failing to properly present, negotiate, or effect an association with a larger

21                 research institution.

22          **(l)**    Allowing USC and UCLA to hire the vast majority of HRI's researchers.

23          **(m)**    Abdicating governance and oversight responsibilities to Boswell, Meyer,

24                 CBRE, and each of them.

25          **(n)**    Failing to adequately supervise Boswell, Meyer, CBRE, and each of them.

26          **(o)**    Failing to adequately monitor the negotiation and execution of a "sell

27                 strategy," resulting in a rushed and uninformed sale process of HRI's

28                 significant assets.

1         **(p)**   Acquiescing in and approving the rushed sale of HRI's assets before filing

2                  bankruptcy, rather than through a court supervised auction under section

3                  363.

4         **(q)**   The approval by the Approving Trustees on an uninformed basis of the fire

5                  sale of all, or substantially all, of HRI's assets for a fraction of their value.

6         **(r)**   The approval by the Approving Trustees of the Watt Transaction in a rushed

7                  and uninformed manner.

8         **(s)**   Failing to obtain and consider all material information prior to approval of

9                  the Watt Transaction.

10        **(t)**   Failing to inquire as to what other purchasers would pay for the same assets

11                 as acquired in the Watt Transaction.

12        **(u)**   Conducting a massively deficient sale process in a rushed and ineffective

13                 manner that resulted in HRI receiving grossly inadequate consideration for

14                 all or substantially all of its assets.

15        **(v)**   Failing to obtain and consider all material information concerning and to

16                 adequately consider selling the property the subject of the Watt transaction

17                 or additional property in a sale process in and supervised by the bankruptcy

18                 court or allowing the property to be sold by a Chapter 7 or Chapter 11

19                 Trustee.

20        **(w)**  Failing to sell the property the subject of the Watt transaction or additional

21                 property in a sale process in and supervised by the bankruptcy court or

22                 allowing the property to be sold by a Chapter 7 or Chapter 11 Trustee.

23        **(x)**   Failing to report the intention to sell all or substantially all of HRI's assets

24                 to the California Attorney General, who under California law is entrusted

25                 with the duty to oversee such sales by non-profit organizations.

26     106.   These acts and omissions also constituted breaches of fiduciary or other duties owed

27 to creditors, including those arising when HRI was operating in the zone of insolvency or was

28

1 insolvent, including, without limitation, the duty to avoid actions that divert, dissipate, or unduly

2 risk corporate assets that might otherwise be used to pay claims of creditors.

3      107.    The acts and omissions above were in bad faith and demonstrated a faithlessness or

4 lack of true devotion to the interests of HRI.

5      108.    The acts and omissions above were reckless, wanton, intentional, or grossly

6 negligent.

7

8                    **FIRST CLAIM FOR RELIEF**

9      **(Breach of Fiduciary Duty of Loyalty and Lack of Good Faith)**

10          **(Against All Defendants, and Does 1-25)**

11      109.    Plaintiff refers to and incorporates herein by reference each and every allegation

12 contained in paragraphs 1 through 108, inclusive, as though fully set forth herein.

13      110.    By committing the acts and omissions above, Defendants, and each of them, failed

14 to act in good faith and breached their fiduciary duty of loyalty.

15      111.    HRI was harmed by said acts, omissions, and breaches in an amount to be proved at

16 trial.

17

18                    **SECOND CLAIM FOR RELIEF**

19      **(Breach of Fiduciary Duty of Care and Lack of Good Faith)**

20          **(Against All Defendants, and Does 1-25)**

21      112.    Plaintiff refers to and incorporates herein by reference each and every allegation

22 contained in paragraphs 1 through 108, inclusive, as though fully set forth herein.

23      113.    By committing the acts and omissions above, Defendants, and each of them, failed

24 to act in good faith and breached their fiduciary duty of care.

25      114.    HRI was harmed by said acts, omissions, and breaches in an amount to be proved at

26 trial.

27

28

1322103.4                    20

### THIRD CLAIM FOR RELIEF

### (Corporate Waste)

### (Against All Defendants and Does 1-25)

115.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 108, inclusive, as though fully set forth herein.

116.    By committing the acts and omissions above, Defendants, and each of them, breached their duty not to commit corporate waste, including, without limitation the duty to avoid actions that divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay claims of creditors.

117.    HRI was harmed by said acts, omissions, and breaches in an amount to be proved at trial.


WHEREFORE, Plaintiff prays that judgment be entered as follows:


### ON THE FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF:

1.    That damages be assessed against the Defendants, and each of them according to proof;

2.    For costs of suit incurred herein;

3.    For interest according to law; and

4.    For interest thereon from the respective date of receipt of each of the Transfers.

5.    For all other and further relief as the Court deems just and proper.


DATED:  April 26, 2016                    DANNING, GILL, DIAMOND & KOLLITZ, LLP



_____/s/ Walter K. Oetzell_____
WALTER K. OETZELL
Attorneys for John J. Menchaca, Trustee for the Chapter 7
Estate of TIFKAH, fka the House Research Institute

FORM B104  (08/07)                                                                        2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS JOHN J. MENCHACA, Trustee for the Chapter 7 Estate of TIFKAH | DEFENDANTS WALLIS ANNENBERG, an individual; LYNN BOOTH, an individual; JAMES D. BOSWELL, an individual; etc.1 |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Walter K. Oetzell, Danning, Gill, Diamond & Kollitz, LLP - 1900 Avenue of the Stars, 11th Fl., Los Angeles, CA 90067 (310) 277-0077 | ATTORNEYS (If Known) |
|---|---|

**PARTY** (Check One Box Only)

☐ Debtor   ☒ U.S. Trustee/Bankruptcy Admin
☐ Creditor   ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)

☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor   ☒ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
COMPLAINT FOR BREACH OF FIDUCIARY DUTY OF LOYALTY; BREACH OF FIDUCIARY DUTY OF CARE; AND CORPORATE WAST

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 1 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 5,000,000 |

Other Relief Sought

CCD-B104

FORM B104 (08/07), page 2                                          2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br>TIFKAH, fka THE HOUSE RESEARCH INSTITUTE | BANKRUPTCY CASE NO.<br>2:14-bk-21532-TD |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| CENTRAL | LOS ANGELES | THOMAS B. DONOVAN |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| | | |

**SIGNATURE OF ATTORNEY (OR PLAINTIFF)**

| DATE<br>April 26, 2016 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>WALTER K. OETZELL |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.